## TANNER vs. CHAPMAN.

1. If the defendant removed the furniture (for the destruction of which suit was brought to recover damages) from the house where it was left, and where the plaintiff had a right to leave it, without authority from her and at his own risk, he thereby became liable for any injury done to it while it was being removed from one place to another, or while it was in his custody at the place where it was officiously moved by him without the owner's consent previously obtained. He is liable for damages resulting from such an act, whether he exercised care in the removal of the furniture or not. 2 Bouv. L. Dic., 186; Story Bailments, §§189, 190; 40 Ga., 94.

(a.) The jury had the right to believe the plaintiff and her witness,

and if they did so, there was sufficient evidence to authorize a verdict.

2. There being no exception to any ruling or charge of the court, the verdict being authorized by the evidence, and the court below being satisfied therewith, this court will not interfere.

Judgment affirmed.

December 15, 1885.

HALL, Justice.

[Mrs. E. A. Chapman sued H. M. Tanner in a justice's court to recover on an open account, which charged the defendant with certain furniture of the value of $100.00. The case was carried to the superior court by appea    On the trial, the evidence for the plaintiff was, in brief, as follows:    A house owned by plaintiff, together with the furniture contained in it, was rented to one Kasey for a term ending September 1, 1884.   Lampkin was the agent of the plaintiff to rent the house for a term beginning September 1, without the furniture.    Kasey moved away from the city about August 1, and engaged Lampkin to rent the house for the remainder of the month, either with or without the furniture.   As Kasey's agent, he rented the house, without the furniture, to defendant, Tanner, who moved into the house about August 15, for the remainder of that month, and as plaintiff's agent, he rented to Tanner for a term beginning September 1.   Lampkin notified the plaintiff that he had rented to Tanner, who desired to move into the house, and requested her to come up and move the furniture, she being then at a point some distance off. She went up and moved most of the furniture, leaving a side-board, a sewing machine and a clock.   The remainder of the furniture she moved into another house, but did not have sufficient room for those articles.   After Tanner moved into the house, he told Lampkin that this furniture was in his way.   Lampkin suggested that Tanner might use the furniture, and requested him to let it remain until about September 1, when the plaintiff would return to the city and take it away.   The defendant said he did not have

the keys to the side-board. Lampkin wrote to the plaintiff for them, but not having them with her, she could not send them. Part of the side-board could be used without the keys. In a day or so, the defendant again told Lampkin that the furniture was in his way and he wanted it moved, to which Lampkin replied that he had no place where to put it and no authority to move it, but would write to the plaintiff about it. Defendant said he would carry it to his warehouse at his mill and keep it for the plaintiff without charge. Lampkin consented for him to do so, but he had no agency or authority in respect to the furniture. The defendant knew this and all about the arrangement between Kasey and the plaintiff, and that the rent he paid for August went to Kasey. The mill was about a mile distant and out of town. In removing it, the furniture was broken. The defendant in ormed Lampkin of that fact, and asked him to see the plaintiff and get her to be as light with him as possible.. When she returned to the city, she was informed of the breaking of the furniture and expressed regret in regard to it. There was testimony also as to the value of the furniture.

The defendant testified, in brief, as follows: He rented the house from the plaintiff, through her agent, Lampkin. He had furniture' enough of his own, and when he rented, it was agreed that the furniture should be removed from the house in August. He paid Kasey the rent for the balance of August. The plaintiff came up and moved most of the furniture, leaving some of it, contrary to the contract with Lampkin. He needed all the room in the house for his own furniture. He saw Lampkin, who consented for him to remove the furniture and store it in his warehouse, provided it should cost the plaintiff nothing. Lampkin never told him that he did not have authority to remove the furniture, but, on the contrary, directed him to remove it, and he never doubted Lampkin's authority to do so as the plaintiff's renting agent. The furniture was carefully removed. He offered to have it repaired and

bear half the expense of so doing. He did not consider himself legally bound for anything, and what he said to Lampkin about a compromise with the plaintiff was for the purpose of effecting a peaceable settlement, and not because he considered himself liable. He stated what he considered the value of the property.

Another witness, who assisted in removing the furniture, stated that care was used in handling it.

The jury found for the plaintiff $45.00. The defendant moved for a new trial because the verdict was contrary to law, evidence and the charge of the court. The motion was overruled, and he excepted.]